

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   EDCV 08-00481-SGL                                    Date: October 6, 2008

Title:   JAMES GRISLEY and CAROL GRISLEY -v- COUNTRYWIDE HOME LOANS, INC., and DOES 1-10
=================================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

    Jim Holmes                                      Donald Hilland
    Courtroom Deputy Clerk                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:           ATTORNEYS PRESENT FOR DEFENDANTS:

Nathan W. Fransen                           Christopher L. Dueringer

PROCEEDINGS:   ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

The case presents a narrow question that governs nearly all the claims being asserted in the complaint:  Is submission of a notice of rescission enough, even when that notice is contested by the mortgage note holder, to render invalid or otherwise call into question a subsequent foreclosure sale of property (or as plaintiffs have framed it — does the submission of such a letter to the note holder by itself "rescind" a loan), or must the party file an action (presumably after the notice of recession is contested by the note holder) seeking a declaration that such rescission has taken place before such a sale takes place?  *The Court answers this question in the negative. Thus, the fact that the property, the subject of the notice of rescission, was sold at a foreclosure sale bars any rescission rights the debtor may have had as to the loan under the Truth in Lending Act.*

A.     FACTS AS RELAYED IN COMPLAINT

During the winter of 2006, plaintiffs had begun to fall behind in their mortgage payments on a loan secured by a deed of trust on their home at 138 South Marcella Avenue in Rialto, California. In either December, 2006, or January, 2007, a salesman came to their door and told them about a way that they could avoid foreclosure on their home.  The salesman informed them that they could refinance their home and in the process take equity out of their home and use it to pay off existing credit card bills.  The salesman spun promises of a dramatically lower monthly mortgage payment.

What sounded too good to be true was, in fact, too good to be true. What the salesman did not inform the plaintiffs was that they were going to be refinanced out of their existing fixed-rate loan into a interest only loan at a much higher interest rate (11.25%). Not realizing the nature of the deal being sold to them, plaintiffs quickly agreed to go forward with the loan pitched by the salesman.

A few days later in January, 2007, a mobile notary came to the plaintiffs' home and in minutes the couple signed loan documents that were quickly taken away. The notary allegedly failed to provide the couple with a copy of their loan documents after they had been signed and failed to provide them with any notices of right to cancel as required by the Truth in Lending Act and Regulation Z. Moreover, the loan originator, Quality Home Loans, failed to provide certain disclosures, namely the "amount financed" and the "finance charge," in connection with the loan.

Quality Home Loans then sold the loan to defendant Countrywide Home Loans ("CHL"). Apparently, the refinanced loan did not alleviate plaintiffs' financial difficulties and they again began to fall behind in their mortgage loan payments. As explained in the complaint, the couple could not attempt to re-re-finance their existing loan because the equity/debt ratio in their home had become "upside down," meaning they owed more than the home was worth.

On October 31, 2007, plaintiffs sent CHL a letter demanding for the recession of the mortgage because no loan documents were provided at closing and because the couple was not provided with any notices of their right to cancel. Counsel for plaintiffs followed up with additional letters re-confirming the notice that had been submitted in October.

Finally, on January 14, 2008, CHL responded to plaintiffs' letter, disputing that any Truth in Lending violations occurred and rejecting plaintiffs' request to rescind the loan. The property was thereafter foreclosed upon and the deed of trust thereto was sold at a public auction on February 25, 2008. (Def's Request for Judicial Notice, Ex. B at 23). Three days later plaintiffs observed a Coldwell Banker representative taking pictures of their home. When confronted by plaintiffs, the representative informed them that their home had been sold at auction and that he was taking pictures for the home so that it could be sold again. The communication of such information caused plaintiffs extreme emotional distress; indeed, Mrs. Grisley has suffered two heart attacks since that time.

On April 9, 2008, plaintiffs filed the instant complaint asserting federal claims for a declaration that they have rescinded the loan due to Truth in Lending Act violations (causes of action 1 and 2), for the imposition of a constructive trust on the property and require that title to the property be conveyed to plaintiffs from defendant, cancellation of the grant deed from the public auction of the property as void, and state law claims for unfair business practices and negligent infliction of emotional distress.

B.    ANALYSIS

As defendants cogently observe and as plaintiffs readily admit, plaintiffs claims are all "premised upon the . . . legal conclusion that [they] have 'rescinded' their loan." (Reply at 2). If, however, it is found that the loan had not been rescinded prior to the foreclosure sale of the property, then, with the sale falls the basis for their claims. This brings into focus the question for resolution: Did plaintiffs rescind the loan through the submission of the October letter to defendant? The answer to that question is no.

As well explained in the case of Jones v. Saxon Mortgage, Inc., 980 F.Supp. 842 (E.D. Va. 1997), section 1635(a) to the Truth in Lending Act gives a debtor the absolute right to rescind a loan. "The obligor shall have the right to rescind the transaction . . . by notifying the creditor . . . of his intentions to do so." That right, however, is cabined by an equally unbending time limit to do so: "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." 15 U.S.C. § 1635(f). In filling in the details of how the mechanics of such a right were to be exercised, Congress "specifically designated the Federal Reserve Board . . . as the primary source of interpretation and application of truth-in-lending law." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 567 (1980). To that end, the Federal Reserve Board (through one of its divisions) provided the following commentary concerning the right to rescission set forth in the Truth in Lending Act:

> 3. *Unexpired right to rescission.* . . . the right to rescind automatically lapses on the occurrence of the earliest of the following three events:
>
> ● The expiration of three years after the consummation of the transaction.
>
> ● Transfer of all the consumer's interest in the property . . .
>
> A sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind.

12 C.F.R. Pt. 226.23, Supp. 1 (1997). The reason that the right to rescind is cut off upon the subsequent sale of the property at foreclosure is to remove any doubt that there was a cloud over title to the property upon such a sale. As the Ninth Circuit explained: "Congress probably enacted § 1635(f) because it worried that allowing a consumer to rescind" after the residence was sold "would cloud property titles and inhibit transactions." Hefferman v. Bitton, 882 F.2d 379, 384 (9th Cir. 1989). It was for this reason that the court in Jones ruled that, absent successfully exercising the rescission right beforehand, a foreclosure sale ends such a right afterwards by way of the time bar provisions of section 1635(f):

> The TILA is a remedial statute enacted to provide consumers with a greater ability to shop for fair credit, and its rescission provisions are a significant component of that objective. However, Congress was also

> concerned that such unexpired rights could cloud titles to residential real estate and impair its marketability.
>
> Congressional intent to eliminate uncertainty created by unexercised rescission rights would be undermined if [plaintiff] could present a rescission claim [long after such a sale]. Congress clearly intended that the consumer must litigate <u>to a conclusion</u> any rescission rights <u>before a sale of the contested property</u>. In that regard, it is significant that [plaintiff] cited and the Court could find no decisional authority which permitted a consumer to litigate a rescission claim under the TILA after the property was sold.
>
> . . . .
>
> For the foregoing reasons, the right to rescind under the TILA, if there was one on the facts, expired when [plaintiff] failed to raise <u>and resolve</u> it <u>before the sale of the residence at foreclosure</u> . . . .

980 F.Supp. at 847-48 (emphasis added).

    This notion that one must not only raise a claim to rescission (which no one in this case disputes plaintiffs did) before the property is sold to preserve the right to rescind, but must also have that rescission claim "resolved" before the sale is also borne out by the Ninth Circuit's decision in <u>Yamamoto v. Bank of New York</u>, 329 F.3d 1167, 1172 (9th Cir. 2003). There the court noted that the simple filing of a claim (as per the letter to CHL in this case) does not, by itself, do away with the security interest the creditor has in the property and with it the creditor's right to exercise that interest to sell the property: It "cannot be said that the security interest vanishes immediately upon the giving of notice. Otherwise a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender actually committed any. Rather, under the statute and regulation the security interest 'becomes void' only when the consumer 'rescinds' the transaction. <u>In a contested case</u>, this happens when the right to rescind is determined in the borrower's favor. Until such a decision is made the borrowers have only advanced a claim seeking rescission."

    All that plaintiffs did in this case is advance a claim for rescission; they did not rescind the loan by submitting the letter to CHL. Given that the loan was not rescinded <u>before</u> the sale at auction of the property, plaintiffs' right to rescind the loan was barred from being asserted the moment that sale was consummated, which also effectively eliminated plaintiffs' entitlement to a constructive trust on the property or their ability to have the grant deed from that sale cancelled. Plaintiffs' contention that such a construction of the statute conflicts with the automatic nature of the TILA's rescission provisions is mistaken. Once the creditor disputes the debtor's proffered exertion of the right to rescind, the burden falls on the debtor to seek a declaration from a court that it has in fact rescinded the loan. Toward that end, the debtor is allowed to seek a temporary restraining order or other injunctive relief to prevent a sale that would otherwise cut off their

MINUTES FORM 90  
CIVIL -- GEN                          4                      Initials of Deputy Clerk: jh  
                                                                    Time: /10

EDCV 08-00481-SGL(JCRx)
JAMES GRISLEY and CAROL GRISLEY v COUNTRYWIDE HOME LOANS, INC., and DOES 1-10
MINUTE ORDER of October 6, 2008

rescission rights by making an application of the same to the court when filing their declaratory relief action.

Additionally, with no federal claims left, the Court declines to exercise its supplemental jurisdiction over the remaining state law unfair competition and negligent infliction of emotional distress claims.

Accordingly, the motion to dismiss is **GRANTED** and the clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**